UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ramses Polland, | ) | |
| Plaintiff, | ) ) ) | No. 20-cv-7054 |
| v. | ) ) | Judge April M. Perry |
| City of Chicago, Russel Ellis II, and Joshua Rankin, | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On November 30, 2020, Plaintiff Ramses Polland ("Plaintiff") initiated this suit under 42 U.S.C. §1983 against Chicago Police Department Officers Russel Ellis II ("Officer Ellis") and Joshua Rankin ("Officer Rankin"), and the City of Chicago. Plaintiff claims that Officer Rankin and Officer Ellis (together, "Defendant Officers") used excessive force when arresting him in December 2018. Defendants now move for summary judgment. For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**

On December 29, 2018, Defendant Officers were on patrol and were dispatched to respond to a burglar alarm at a nearby residence. Doc. 98 at 2. When they arrived, Defendant Officers noticed footprints in the snow on the ground and followed the footprints to the backyard. *Id.* at 3. In the backyard, Defendant Officers saw three men who appeared to be moving a refrigerator down a small set of stairs connected to the house. *Id.* at 4. Plaintiff was one of those men and was standing in the yard near the bottom of the stairs. *Id.* Plaintiff is significantly larger in both height and weight than Defendant Officers. *Id.*

1

Officer Ellis asked everyone what was going on, and Plaintiff said he was helping someone move a refrigerator. Doc. 98 at 4. Officer Ellis asked everyone to come downstairs. *Id.* The men took off running, including Plaintiff, who ran away from the house through the backyard. *Id.* Officer Ellis ran after Plaintiff, shouting for him to stop. *Id.* at 4–5. Officer Ellis followed Plaintiff through the backyard, down an alley, past several houses, over a fence and down a gangway back to the alley behind the house where Officer Ellis caught up with Plaintiff, who at that point had stopped running. *Id.* The chase lasted about forty-five seconds. *Id.* at 6. Plaintiff testified that he stopped running because he was out of breath and had given up. *Id.* at 6.

After Officer Ellis caught up with Plaintiff, Officer Ellis stated "come here man, come here" but Plaintiff kept walking ahead of Officer Ellis down the alley. Doc. 93-7 ("Ellis Footage") at 3:05–3:09. Officer Ellis then ordered Plaintiff to "put your hands up" but Plaintiff did not put his hands up and instead kept walking, just ahead of Officer Ellis. Ellis Footage at 3:20–3:24. Both Plaintiff and Officer Ellis continued to walk down the alley, with Plaintiff just ahead, for about twenty seconds. Ellis Footage at 3:05–3:29. At this same time, Officer Rankin was approaching from the north side of the alley. Doc. 98 at 6.

Officer Rankin drew his taser and pointed it at Plaintiff, shouting at Plaintiff to turn around. Ellis Footage at 3:29–3:35; Doc. 93-8 ("Rankin Footage") at 3:29–3:35. Plaintiff continued to walk forward, briefly put his hands up, dropped them, then pointed at something as he tried talking to Defendant Officers. *Id.* Officer Rankin continued to shout at Plaintiff to turn around, and then Officer Ellis stepped in, grabbing Plaintiff's raised arm. *Id.* Plaintiff turned towards the garage door as Officer Ellis pulled Plaintiff's arms behind his back to handcuff him. Doc. 98 at 7; Ellis Footage at 3:30–3:36. Plaintiff testified that he allowed Officer Ellis to grab

2

his wrist and put his hands behind his back; the body camera footage does not obviously contradict this. Doc. 98 at 7; Doc. 93-3 at 25; Ellis Footage at 3:29–3:36.

Officer Rankin then returned his taser to his belt and assisted Officer Ellis in handcuffing Plaintiff. Officer Ellis applied the handcuffs to Plaintiff's wrists while Officer Rankin held Plaintiff's left arm. Doc. 98 at 8. Plaintiff testified that during the handcuffing, Officer Ellis "twisted my wrist against where it [sic] normally supposed to go" and "applied pressure on my wrist and snapped the cuffs tight on me." Doc. 93-3 at 24. Plaintiff further testified that he did not physically resist the handcuffing. Doc. 99 at 2. During his handcuffing, Plaintiff stated "nah, f*** this, I ain't going down." Rankin Footage at 3:39–3:41. Plaintiff did not tell either Defendant Officer that he felt discomfort while they were handcuffing him, nor did he otherwise indicate that he was in pain or ask to have the handcuffs loosened. Doc. 98 at 10. After handcuffing Plaintiff, Defendant Officers walked him from the alley to their squad car. *Id.* at 11. It took approximately three minutes to get Plaintiff to the car, during which time Plaintiff still did not communicate any pain. *Id.* By the time they reached the squad car, backup officers were arriving on scene. *Id.*

Several more minutes elapsed during which Plaintiff and Defendant Officers (and now additional officers) were communicating, and still Plaintiff did not complain of pain. *Id.* at 12; Ellis Footage at 4:05–9:18. Roughly seven minutes and forty-five seconds after Plaintiff's arrest, Officer Rankin came over to the squad car and opened the door, asking Plaintiff if he had identification on him, and Plaintiff responded that he did. Rankin Footage at 13:40–13:46. Plaintiff then communicated that his wrist was injured, stating "my wrist broke man" and "[I] can't feel my wrist." Rankin Footage 13:42–14:00.

3

Once notified, Defendant Officers asked Plaintiff to step out of the squad car and briefly searched him but did not immediately remove or adjust his handcuffs. Doc. 98 at 12; Ellis Footage at 13:50–14:20. During that time, Plaintiff spoke with the officers (including Defendant Officers), explaining why he was at the house and answering officers' questions. Ellis Footage at 14:00–15:19. Approximately ninety seconds later, still standing beside the squad car, Plaintiff complained again, stating "I can't feel my wrist." *Id.* at 15:19–15:22. Defendant Officers then removed Plaintiff's handcuffs, at which point they were able to see that Plaintiff's right wrist was swollen. *Id.* at 15:22–16:22. Plaintiff commented "I'm supposed to have two handcuffs on me y'all got one." *Id.* at 16:05–16:10. Defendant Officers then added a second set of handcuffs to extend the handcuffs' length and placed Plaintiff back in the squad car. *Id.*; Doc 98. at 12–13. Shortly thereafter, Plaintiff was taken directly to the hospital for evaluation. Doc 98. at 13. At the hospital, Plaintiff was x-rayed and examined by Dr. Paul Lamberti, a board-certified orthopedic surgeon. *Id.* at 13–14. Dr. Lamberti determined that Plaintiff's wrist was fractured. *Id.* at 14.

On November 30, 2020, Plaintiff filed suit against Defendant Officers and the City of Chicago under 42 U.S.C. §1983, alleging that Officer Rankin and Officer Ellis used excessive force during his arrest. After the close of discovery, Defendants filed a motion for summary judgment. Doc. 92.

**LEGAL STANDARD**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A dispute as to material facts is genuine, and summary judgment will be denied, "if the evidence is such that a reasonable jury" could resolve the dispute by returning a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

moving party bears the initial responsibility of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c). Ultimately, however, the party who bears the burden of proof on any issue may not rest on the pleadings and must affirmatively present some evidence to support its claims. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Even so-called "self-serving" testimony from the non-moving party, if "based on personal knowledge or firsthand experience," can be "evidence of disputed material facts." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

"At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). However, when "opposing parties tell two different stories, one of which is blatantly contradicted by the record," such as by video evidence that cannot be interpreted consistent with one version of the facts, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

The Fourth Amendment's reasonableness standard governs Plaintiff's claim that the arresting officers employed excessive force during his arrest. *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). An officer's use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably

5

necessary to make the arrest." *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir. 1987). "The nature and extent of the force that may be used depends upon the circumstances surrounding the arrest" such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Stainback*, 569 F.3d at 772 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The standard asks not how the situation appears with the benefits of hindsight but "how things appeared to the objectively reasonable officers at the time of the events." *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Defendants argue that summary judgment is appropriate because the arresting officers' use of force was objectively reasonable. In support of this argument, they state that Plaintiff was actively resisting arrest and attempting to flee, posed an immediate threat to the safety of Defendant Officers, and that Defendant Officers used only the minimum amount of force necessary to detain Plaintiff against his resistance. Plaintiff disputes that he posed a flight risk, that he resisted arrest, and that he posed an immediate threat to the safety of Defendant Officers. The Court begins its analysis by determining which of these disputes are genuine, then turns to whether Defendants are entitled to judgment as a matter of law if all reasonable inferences are drawn in Plaintiff's favor.

First, the Court agrees with Defendants that there is no genuine dispute as to whether Plaintiff posed a flight risk. The record cannot reasonably be interpreted to support a conclusion other than that Plaintiff posed a flight risk given that the parties agree, and there is video evidence that shows, Plaintiff running away from Defendant Officers less than a minute before Plaintiff was arrested. It may be true that Plaintiff had subjectively given up his desire to flee at the time he was arrested, but Defendants had no reason to know that. *Miller v. Gonzalez*, 761

6

F.3d 822, 828 (7th Cir. 2014) (excessive force turns on objective reasonableness "in light of the information known at the time"). Plaintiff has admitted that he stopped running because he was out of breath, Doc. 98 at 6, a condition that could have been resolved fairly quickly. And rather than indicating that he had given up, Plaintiff was still saying things like, "nah, f*** this, I ain't going down" at the time he was being handcuffed. Rankin Footage at 3:39–3:41. Based upon this, it was objectively reasonable for Defendant Officers to conclude Plaintiff posed a risk of flight.

The Court also believes that there can be no genuine dispute that Plaintiff posed a potential physical threat to Defendant Officers. Plaintiff argues that he posed no physical threat because Defendant Officers were armed with tasers and their duty weapons. But the fact that officers are armed does not mean a suspect poses no threat to their safety. *Cf. Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (reasoning that suspect posed an immediate threat to officer's safety when he got out of his vehicle during a traffic stop and refused commands to get back into the car or put his hands above his head, and where officer was in a vulnerable position away from his police vehicle, notwithstanding that officer eventually drew his taser). Various circumstances can contribute to an officer's objectively reasonable belief that a suspect poses an immediate threat, and here the evidence establishes that Plaintiff was physically larger than Defendant Officers, Defendant Officers were a considerable distance from their vehicle without backup immediately available, and Plaintiff had fled, refused to follow commands, and said he was not "going down." Rankin Footage at 3:39–3:41. Plaintiff had been at the scene of a felony burglary, and Defendant Officers had not yet had the ability to search him for weapons. Based on these facts, it was objectively reasonable for Defendant Officers to conclude that Plaintiff posed a risk to Defendant Officers' safety.

That said, the Court concludes that there is a genuine dispute as to whether Plaintiff was actively resisting officers at the time of his arrest. Defendant Officers have testified that Plaintiff was tensing up his arm muscles and trying to pull his arm away from them as they were handcuffing him. Doc. 98 at 8–9. Plaintiff disagrees, and Plaintiff's version of events is not obviously contradicted by the video evidence. But even when viewing the evidence in the light most favorable to Plaintiff, the record (including the video evidence) shows that Plaintiff was at least passively resisting during the moments before he was handcuffed. *See Miller*, 761 F.3d at 829 (explaining that plaintiff passively resisted by obeying all orders except that to put his hands behind his back). First, when Officer Ellis caught up with Plaintiff, Officer Ellis ordered Plaintiff to "come here" but Plaintiff continued to walk ahead. Officer Ellis then ordered Plaintiff to put his hands up but Plaintiff did not, continuing to walk just ahead. Then, when Officer Rankin began to approach, Officer Rankin repeatedly shouted at Plaintiff to turn around. Plaintiff did not obey even after Officer Rankin drew his taser. Officer Rankin continued to shout at Plaintiff to turn around, and then Officer Ellis stepped in, grabbing Plaintiff's arm. At this point, a reasonable jury could interpret the evidence (both testimonial and video) to suggest that Plaintiff in fact allowed Officer Ellis to grab his hand and willingly put his hands behind his back. But no reasonable jury could find that Plaintiff did not at least passively resist by disobeying orders prior to Officer Ellis grabbing his arm.

With these evidentiary disputes resolved, the Court now turns to whether Defendants are entitled to judgment as a matter of law. Plaintiff argues that Defendants are not entitled to summary judgment because Plaintiff was subjected to excessive force during his initial handcuffing and later when the officers failed to timely and appropriately respond to his injured wrist.

8

*Excessive Force*

For Plaintiff to establish that the officers' use of force was excessive, he must "do more than point to his injury or its seriousness; he must also 'identify the *specific unreasonable conduct* that caused [his] injuries.'" *Stainback v. Dixon*, 569 F.3d 767, 773 n.7 (7th Cir. 2009) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 770–71 (7th Cir. 2005)). The conduct Plaintiff complains of is that Defendant Officers "twisted" his "wrist against where it [sic] normally supposed to go" and "applied pressure" on his wrist, snapping "the cuffs tight on me". Doc. 93-3 at 24.[1] Like in *Stainback*, this "version of events does not describe conduct that was objectively unreasonable." 569 F.3d at 773 n.7. Considering that Plaintiff was suspected of a felony offense, had just attempted to flee the scene, was at least passively resisting by disobeying orders, and was physically larger than both arresting officers, it was not objectively unreasonable for the officers to move Plaintiff's arm and wrist with some coercive physical pressure in order to secure his restraint. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (reinforcing that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). The type of conduct Plaintiff describes does not approach the kind of aggressive handcuffing that has been deemed excessive by the Seventh Circuit. *Compare, e.g.*, *Stainback,* 569 F.3d at 773 n.7 (concluding conduct not excessive where arrestee described that officers quickly twisted his arms behind his back), *with, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (concluding officers' conduct was

---

[1] Plaintiff also testified that his handcuffing occurred in an "unorthodox way." Doc. 98 at 14. It is not clear what Plaintiff meant by this, but the video evidence does not show Defendant Officers doing anything unusual as far as handcuffing goes—for example, they did not manipulate Plaintiffs' arms into an odd position or obviously display a high level of force or aggression. Officer Ellis only touched Plaintiff's right wrist for approximately fifteen seconds. Ellis Footage at 3:47–4:02. Plaintiff now argues that Defendant Officers violently shoved him up against the garage door but does not support this allegation with evidence in the record. Plaintiff's testimony was that he was pushed up against the garage, and the video evidence does not show Plaintiff being violently or forcefully pushed (or even really pushed at all, though this is less visible) against the garage. *See* Doc. 93-3 at 28 ("Well, I got pushed up against the garage"); Rankin Footage at 3:35–4:06.

excessive where they "fought over [plaintiff's] arm for thirty minutes, eventually forcing her arms behind her back, twisting her arm, and over tightening the handcuffs" significantly injuring arrestee who "was not resisting or evading arrest, was not attempting to flee," was charged with minor offenses and did not disobey the officers' orders).

Plaintiff places significant emphasis on the fact that he had "given up" by the time he was arrested and did not actively resist, suggesting that because of this passivity Plaintiff should not have been subjected to such force. But there is no bar on the use of some minimal force against a suspect who remains passively resistant. Rather, the bar is on the use of force against a subdued suspect, and "depends critically on the fact that the suspect is indeed subdued." *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). In determining whether a suspect is subdued, the police need not take a suspect's "apparent surrender at face value." *Id.* Thus, when the police remain reasonably unsure of how a suspect is going to behave after an attempt to flee, the continued use of some force shortly after the attempt remains reasonable, at least until the suspect is truly subdued. *Compare, e.g.*, *Miller*, 761 F.3d at 830 (finding excessive officer's use of force in kneeing suspect in the jaw after he was prone and motionless and subdued at gunpoint for upwards of ten seconds), *and Becker v. Elfreich*, 821 F.3d 920, 929 (7th Cir. 2016) (finding that officer used excessive force by pulling suspect who had surrendered and put his hands up down a set of stairs, placing a knee on suspect's back, and allowing K-9 to continue to bite him), *with, e.g.*, *Johnson*, 576 F.3d at 659-60 (finding use of force in striking suspect several times until he was handcuffed not excessive where shooting suspect fled from police until cornered in a residential yard and officers "had no idea how [suspect] was going to behave" next). Here, the video evidence shows that though Plaintiff may have given up his attempt to run and was not actively resisting arrest by the time he was handcuffed, he was not restrained or clearly subdued

10

until Defendant Officers used some force. Specifically, the video evidence shows Plaintiff continuing to move freely, walking ahead of Officer Ellis until Officer Rankin presented his taser and then Defendant Officers initiated Plaintiff's handcuffing. Moreover, even after Officer Rankin drew his taser, Plaintiff was not immediately subdued as he did not obey Officer Rankin's order to turn around. Under such circumstances, Defendant Officers were justified in using some physically coercive pressure to restrain Plaintiff's hands behind his back.

The Court's conclusion is based on the objective reasonableness of the specific conduct Plaintiff describes. *See Stainback v. Dixon*, 569 F.3d 767, 773 n.7 (7th Cir. 2009) (reinforcing importance of focusing on specific conduct). While it is true that Plaintiff's wrist was broken after his encounter with Defendant Officers, no evidence suggests the broken wrist was due to excessive force by Defendant Officers. Defendants' medical expert, Dr. Lamberti, testified that handcuffing could not possibly have caused a fracture like Plaintiff's. Doc. 93-6 at 15 ("the actual process of handcuffing, would not create that fracture"). Plaintiff does not offer any evidence contesting Dr. Lamberti's testimony. While the Court at summary judgment must credit Plaintiff's testimony that his wrist was broken during the handcuffing, to the extent this happened it was apparently an anomaly that not even a doctor could predict—not the result of handcuffs being used in a "manner that would clearly injure or harm a typical arrestee." *Stainback*, 569 F.3d at 773 n.7. Thus, the circumstances here are distinguishable from those cases where an arrestee's injury is indicative of the type of conduct undertaken by the officers. *Cf. Abdullahi*, 423 F.3d at 770–71 (finding excessive force supported by evidence where plaintiff's evidence established that officer knelt on arrestee's back and medical testimony suggested that this could have been arrestee's cause of death, suggesting that officer may have

11

knelt on arrestee's back with his full body weight, conduct which would constitute an excessive use of a force).

Plaintiff next argues that Defendant Officers used excessive force by failing to timely remove or adjust his handcuffs after his arrest, and by putting a second set of handcuffs on Plaintiff's wrist after they learned that he was injured. Plaintiff argues that this violated his right to be free from unnecessary pain or injury given that he presented no risk of flight or threat of injury. But the Court has already found that the undisputed evidence establishes that Plaintiff indeed posed a risk of flight and some threat of injury. More fundamentally though, Plaintiff does not establish that Defendant Officers' response to his complaints of pain was objectively unreasonable under the circumstances. Plaintiff's first complaint of pain was more than seven minutes after Plaintiff was handcuffed. During that time, the video shows Plaintiff speaking with Defendant Officers in a way that did not demonstrate any obvious pain. Then, during the ninety seconds that elapsed between Plaintiff's first and second complaints of pain, the video shows that Plaintiff continued to converse with the officers about matters unrelated to his wrist. Under such circumstances, it was not objectively unreasonable for the officers to have understood Plaintiff's complaint to be relatively non-urgent and to have responded accordingly. Defendant Officers adjusted Plaintiff's handcuffs less than two minutes after Plaintiff's first complaint of pain; as a matter of law given the undisputed facts, this was objectively reasonable. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (affirming finding that use of force was appropriate where handcuffs were likely too tight for approximately twenty-five to thirty-five minutes but where arrestee complained once and "gave the officers no indication of the degree of his pain").

Moreover, Plaintiff does not establish how the addition of a second pair of handcuffs was excessive force. "Adding a second pair of handcuffs indisputably provides more comfort to an

arrestee." *Day v. Wooten*, 947 F.3d 453, 463 n.7 (7th Cir. 2020). It was Plaintiff who specifically requested the second set of handcuffs, telling Defendant Officers, "I'm supposed to have two handcuffs on me y'all got one." Rankin Footage at 16:05–16:15. And Plaintiff offers no evidence suggesting that Defendant Officers knew Plaintiff was still in pain once the second set of handcuffs was applied. *See Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (stating that right to be free from use of handcuffs in a way that inflicts unnecessary pain depends on "whether the officer knows that he is inflicting such pain"). Given this, no reasonable jury could conclude that Defendant Officers used excessive force in keeping Plaintiff handcuffed until he could be transported directly to the hospital. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's excessive force claims.[2]

***Qualified Immunity***

Finally, Defendant Officers are also entitled to qualified immunity. Qualified immunity applies "if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time." *Phillips v. Cmty. Ins.*, 678 F.3d 513, 527–28 (7th Cir. 2012). For all the reasons just discussed as to why Defendant Officers' use of force was not excessive, Defendant Officers could reasonably have believed that their use of force was lawful given the information they possessed at the time. Plaintiff's argument that Defendant Officers violated standard police policy (even if established by appropriate evidence) is not persuasive because "the violation of police regulations … is completely immaterial as to the question of whether a violation of the federal constitution has

---

[2] Plaintiff's argument that Officer Rankin failed to intervene to protect Plaintiff from the use of excessive force, even if properly pled, also fails because Plaintiff was not subjected to excessive force. *See Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (failure to intervene claim fails if no constitutional rights violation occurred).

13

been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Therefore, Defendant Officers are also entitled to qualified immunity.

Having found that Defendants are entitled to judgment as a matter of law on Plaintiff's excessive force claims, no claims remain upon which Plaintiff might be awarded punitive damages.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

Dated: March 28, 2025

_____
APRIL M. PERRY
United States District Judge